29 C.C.P.A. (Patents)

## TINNERMAN v. KOST.

### Patent Appeal No. 4585.

Court of Customs and Patent Appeals.

April 27, 1942.

Albert R. Teare, of Cleveland, Ohio (Bates, Teare & McBean, of Cleveland, Ohio, of counsel), for appellant.

James P. Burns, of Washington, D. C., and Malcolm W. Fraser, of Toledo, Ohio, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Interference Examiners of the United States Patent Office in an interference proceeding wherein appellee was awarded priority of invention of the subject matter of the counts of the interference, three in number.

Count 1 is illustrative of the subject matter involved and reads as follows: "1. In combination a lens supporting member having an opening therein for receiving a lens and apertures for receiving securing screws; a lens having an embossed portion thereon projecting through said opening, a flange thereon for engaging said member in the region of said opening, and a ridge at the edge of said flange extending in the opposite direction from said embossed portion; screws disposed in said apertures with their heads in engagement with said member and their shanks extending away from said member in the substantial direction of said ridge; resilient sheet metal clips, each of which has a bridge portion, depending legs and a helical thread in said

bridge portion, one of said clips being provided for each screw and disposed with one of said legs engaging said member and the other of said legs engaging said flange inwardly of said ridge whereby said bridge portion spans said ridge and said thread is positioned for engagement with its associated screw; and means on said screw heads whereby said screws may be threadedly engaged with said helical thread and turned to draw said clip into engagement with said lens and said member to yieldingly secure said lens in position."

The interference is between an application filed by appellant on September 18, 1939, and a patent issued to appellee on September 5, 1939, upon an application filed on April 21, 1937.

Inasmuch as appellant's application was filed after the issuance of the patent to appellee, the burden is upon appellant to establish priority of invention beyond a reasonable doubt.

The invention involved is concisely stated by the board in its decision as follows: "The subject matter in issue relates to a lens assembly for use in automobile tail lamps although its use in automobile lamps is not restricted thereto. The body of the lamp is provided with an aperture for receiving the lens and the lens has an embossed portion thereon projecting through the aperture. A flange on the lens engages the interior portion of the body and on the internal portion of the lens is provided a rib extending in the opposite direction to the embossed portion. The lens is held in the assembly by means of screws passing through apertures in the body member which in turn engage fastening elements that bear against the body member and the interior portion of the lens. The fastening members consist of clips provided with depending legs and a bridging portion. One of the depending legs engages the flange of the lens inwardly of the ridge and the other depending leg engages the body of the lamp so that the bridge portion of the fastening member spans the bridge. The bridge portion is helically threaded to cooperate with the fastening screw."

The preliminary statement of appellant alleged conception of the invention between September 18, 1936, and December 5, 1936, and reduction to practice between December 5, 1936, and December 22, 1936.

Inasmuch as appellee offered no evidence, he was confined to his filing date, April 21, 1937, for conception of the invention and its constructive reduction to practice.

Appellant took testimony and introduced in evidence a number of exhibits. From such testimony and exhibits it appears that appellant is the vice president and general manager of Tinnerman Products, Incorporated, which was engaged in the business of manufacturing "speed nuts" and selling them to various automotive and automotive equipment manufacturers.

It appears that in 1936 and 1937 the business of appellant was conducted under the name of Tinnerman Stove & Range Company. As said corporate names are immaterial in this case, we shall hereinafter use the word "appellant" in all transactions involving appellant or the companies with which he was connected.

The record shows that in September 1936 the Corcoran Brown Lamp Company submitted automobile lamps to appellant and asked that a fastening means, known as a "speed nut," be developed to hold the lens in place.

Appellant devised two forms of fasteners which he assembled in lamps, both of which were found unsatisfactory. Neither of these fasteners supported the limitations of the counts in issue. A third fastener, Exhibit 13, was developed in December, 1936, but this too failed to meet the limitation of the counts requiring that the resilient sheet metal clips shall have depending legs, for Exhibit 13 had only one depending leg. However, this Exhibit 13 was placed in a lamp assembly and was shop tested and considered satisfactory by appellant. A number of lamp assemblies containing Exhibit 13 were made up and delivered by one of appellant's salesmen to the Corcoran company. This company suggested some changes in the fastener. These changes were thereafter made by appellant; fasteners embodying such changes were made and a sample thereof was introduced in evidence, marked Exhibit 24.

This sample conforms to the element of the count above referred to respecting depending legs of the resilient sheet metal clips. Samples of the fastener like Exhibit 24, assembled in lamps, were submitted to the Corcoran company and in February 1937 an order was given by that company for 100,000 fasteners similar to Exhibit 24. These fasteners were shipped to the Corcoran company on March 24, 1937, but were rejected by that company on March 29,

1937. With respect to this rejection appellant testified that he sent his salesman Voss to the plant of the Corcoran company to ascertain the reasons for the rejection. Appellant further testified:

\* \* \* \* \*

"A. After Mr. Voss made his trip to our customer's plant, he determined that the type of fastener that we had made, while it appeared in preliminary tests to be suitable for the assembly, actually rotated during the assembly operation to such an extent that it would rotate out of position while the assembler tightened the screw, and, therefore, would not hold the lens in position. The fastener could not be held by the operator so as to eliminate this rotation and no suitable type of fixture could be placed in the confined area on the inside of the lamp to eliminate this rotation at least in the minimum amount of time allotted to this assembly operation. Therefore, we authorized the customer to return the shipment for credit, and I have before me a charge-back or debit memorandum sent to us by The Corcoran-Brown Lamp Company under date of April 15, 1937, their charge-back No. 205, calling for the return of 100,000 pieces CB 4283.

\* \* \* \* \*

"Q. 76. Do you know whether or not those speed nuts, mentioned in Exhibit 28, were returned to you? A. Yes. I have two documents before me to indicate the return of these speed nuts, the first being a bill of lading received from The Corcoran-Brown Lamp division, which bill of lading is dated April 16, 1937, and calls for one box of speed nuts.

\* \* \* \* \*

"Q. 81. Do you know whether or not a credit memorandum was issued to The Corcoran-Brown Lamp Company for the merchandise returned to you, as noted on Exhibit 30? A. Yes; I have before me a copy of our credit memorandum, under date of May 25, 1937, issued to The Corcoran-Brown Lamp Company, covering the 100,-000 pieces No. 275 speed nuts originally shipped on our order SP 8188, and returned on their charge-back No. 205, which is now known as Exhibit 28, and there is a reference further to our receiving report No. 802, which is known as Exhibit 30."

With respect to further development of a fastener, appellant testified as follows:

"Q. 83. Then what, if anything, did you do with respect to making fasteners for The Corcoran-Brown Company? A.

We then went to work on the development of a fastener that would overcome the difficulty experienced in the rotation of the fastener, No. 275, and under date of May 10, 1937, I wrote a letter to Mr. W. C. Wootton, telling him that we were working on a new type of fastener that we hoped would overcome the assembly difficulties *which made is impossible for them to use fasteners like No. 275.* (Italics ours.)

\* \* \* \* \*

"Q. 84. Then what, if anything, did you do with respect to making a further fastener? A. We developed a new type of speed nut to which we applied our part No. X 346, and upon completion of the samples we assembled a lamp which Mr. O. G. Voss delivered to Mr. Wootton, of The Corcoran-Brown Lamp Company, which call by Mr. Voss is acknowledged in our letter of June 18, 1937, written to Mr. Wootton by our Mr. J. M. Stofer.

\* \* \* \* \*

"Q. 85. Can you produce a lamp assembly having any fastener like that designated your part X 346, as referred to in Exhibit 34? A. Yes. I have before me a lamp exactly similar to that lamp submitted to Mr. Wootton by Mr. Voss, and as described in Exhibit 34. This, no doubt, is not the same lamp, but it is an exact duplicate of that lamp, and on this lamp there are to be found two samples of speed nuts No. X 346 which eliminated the difficulty experienced in the rotation of the original fastener No. 275.

"(Mr. Teare: I ask that this lamp assembly be marked Exhibit 35.)

"(Marked Tinnerman Exhibit 35.)"

This Exhibit 35 does not support the limitations of the counts here involved, but the negotiations in respect thereto throw some light upon subsequent transactions between appellant and the Corcoran company. Prices were quoted by appellant to the Corcoran company upon fasteners such as Exhibit 35, but none were purchased, presumably because the price was considered too high. It also appears that the Corcoran company had purchased fasteners for its lamps elsewhere, but on October 13, 1937, appellant received from the Corcoran company a letter enclosing a blue print of a fastener and asking appellant to make a price on a quantity of such fasteners. The blue print referred to in the letter was introduced in evidence as Exhibit 38. On the next day, October 14,

1937, appellant replied to this letter as follows:

"This will acknowledge receipt of your letter of October 13th together with blue print of your part #CB–4283.

"As stated over the phone, we have approximately 100,000 pieces of these Speed Nuts on hand, as per the enclosed samples and will be pleased to offer you our base price of $1.70 per M on these 100,000 pieces. Of course, it will not be necessary for you to take the entire quantity at one time.

"Trusting you will find both the samples and the price satisfactory and awaiting an opportunity of further serving you, we remain,

> "Yours very truly
> "Speed Nut Division
> "Tinnerman Stove & Range Co.
> "Geo. A. Tinnerman"

Thereafter, on October 18, 1937, the Corcoran company ordered 50,000 of such fasteners, and according to appellant's testimony the order was shipped to the Corcoran company on October 22, 1937, and on October 26, 1937, the Corcoran company wrote a letter to appellant as follows:
"Gentlemen:

"In regard to our conversation of this morning.

"We have tried these nuts and find that they will assemble OK, therefore, we will use them. Since our print is not to the description of what you say this nut should be, could you favor me with your print on this part?

> "Sincerely yours,
> "The Corcoran Brown Lamp Co.
> "R. Bogart,
> "Chief Inspector."

Appellant and his witness Stofer testified that the fasteners shipped to the Corcoran company on October 22, 1937, were a part of the lot of 100,000 fasteners rejected by said company on March 29, 1937. The Board of Interference Examiners expressed the view that there was doubt with respect to whether the fasteners shipped to the Corcoran company on October 22, 1937, were some of the same fasteners which had been rejected by that company on March 29, 1937. The board referred to the following testimony of appellant upon this point:

"Q. 91. How does the fastener illustrated in Exhibit 38 compare with any drawings that were made by you previous to February 11, 1935? A. The drawing,

Exhibit 38, is practically in all respects a duplication of the drawing appearing on Exhibit 18. We found, however, that in order to make these speed nuts perform the function of holding the assembly satisfactorily a further change was necessary, and it may be noted that on Exhibit 18 a change 'A' was made under date of October 28, 1937.

\* \* \* \* \*

"Q. 98. You have stated heretofore that a change was made in the fastener as noted on Exhibit 18, when you furnished the fasteners as noted on Exhibit 40. Are you correct in that respect, in so far as the fastener is concerned? A. No. The fastener itself was not changed. The print, Exhibit 18, was changed to conform to the fasteners. The fasteners, that were shipped to our customer, The Corcoran-Brown Lamp Company, on their order, mentioned in their letter of October 18, 1937, known as Exhibit 40, were the same fasteners that they had returned to us early in 1937 on their bill of lading, Exhibit 29, and which were covered by our receiving report and credit memorandum, which are Exhibits 30 and 31, respectively.

\* \* \* \* \*"

Respecting this testimony the board in its decision stated: "\* \* \* Such contradictory testimony must of necessity raise a doubt as to whether it was the fastener which was changed or the drawing which was changed to agree with the construction of the fastener and it is not believed that the party Tinnerman has sustained his heavy burden of proof in establishing that the fastener shipped in October, 1937 was the fastener previously shipped in April, 1937."

In arriving at our conclusion in the case, we do not find it necessary to decide whether the fasteners sent to the Corcoran company in October 1937 were a portion of the fasteners originally sent to said company in March 1937, for the reason that there is no evidence in the record upon which it may be found that appellant reduced the invention to practice prior to appellee's filing date. Moreover, granting that appellant was the first to conceive the invention, the evidence affirmatively shows that he was not diligent in reducing it to practice.

It will be observed that the counts do not relate to the invention of a fastener, but each of the counts recites the fastener in combination with other elements stated

in the counts. While appellant testified that the fasteners represented by Exhibit 24 were assembled in a lamp and given a successful shop test, we find no corroboration of such testimony. It is elementary patent law that the uncorroborated testimony of an inventor cannot establish an actual reduction to practice of an invention.

That there was no reduction to practice prior to April 21, 1937, in the sale of the fasteners to the Corcoran company and use of the fasteners by that company is evidenced by the fact that the company rejected the fasteners as unsatisfactory, and with the consent of appellant they were returned to him. Moreover, reduction to practice of the subject matter of the counts is not established in October 1937, for there is no evidence that the lens assembly in which the fasteners were used was such as the counts require.

However, this is immaterial for, assuming that there was a reduction to practice in October 1937, before appellant can prevail he must establish diligence in reducing the invention to practice from immediately prior to appellee's entry into the field, April 21, 1937. That appellant was not so diligent is abundantly established by the evidence. After the rejection of the fasteners by the Corcoran company on March 29, 1937, appellant did nothing toward reducing the involved invention to practice, his only activity in that regard being the claimed reshipment of his original fasteners to the Corcoran company in October 1937. Appellant's activity in developing his Exhibit 35 can not be regarded as diligence in reducing the involved invention to practice since Exhibit 35 does not respond to the counts.

Appellant makes some contention that his fastener is so simple and of such obvious efficacy that no test of the same was necessary.

There is, however, no count before us involving the fastener per se, but only in the combination set out in the claims. A mere reading of the counts shows that to constitute a reduction to practice a successful test of the device claimed was necessary. Moreover, the rejection by the Corcoran company on March 29, 1937, of the fastener, Exhibit 24, discloses that it was not satisfactory in the lens assembly upon which it was employed.

We think it proper to observe that it is significant that no one connected with the Corcoran company was called as a witness by appellant. Presumably, if such a witness had been called, testimony could have been adduced as to the lamp assemblies upon which fasteners such as Exhibit 24 were used.

It is clear that upon the record before us appellant has wholly failed to establish the burden upon him to establish priority of invention, and the decision appealed from is affirmed.

Affirmed.